IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

ELVIRA MEDINA MOLINA,                          Case No. 3:16-cv-00120-TC

       Plaintiff,                          OPINION AND ORDER

    v.

CAROLYN W. COLVIN,
Acting Commissioner of Social
Security,

       Defendant.

_____

COFFIN, Magistrate Judge:

    Plaintiff Elvira Medina Molina seeks judicial review of the Commissioner's decision denying her application for disability insurance benefits ("DIB") and supplemental security income ("SSI") under Titles II and XVI of the Social Security Act. This court has jurisdiction under 42 U.S.C. §§ 405(g) and 1383(c)(3). All parties have consented to allow a Magistrate Judge to enter final orders and judgments in this case in accordance with Fed. R. Civ. P. 73 and 28 U.S.C. § 636(c). Because the Commissioner's decision is based on proper legal standards and supported by substantial evidence, the Commissioner's decision is AFFIRMED.

1 – OPINION AND ORDER

## BACKGROUND

Plaintiff protectively filed an application for DIB and SSI on December 5, 2011. Tr. 208-14, 215-24, 234. Plaintiff was insured under Title II through September 30, 2013. Tr. 234. Following a denial of benefits, plaintiff requested a hearing before an administrative law judge ("ALJ"). On July 25, 2014, an ALJ determined plaintiff was not disabled. Tr. 10-26. Plaintiff appealed that decision to the Appeals Council. On November 20, 2015, the Appeals Council declined to grant plaintiff's request for review, resulting in the ALJ's decision becoming the final order of the Agency. Tr. 1-5. This appeal followed.

## STANDARD OF REVIEW

The reviewing court shall affirm the Commissioner's decision if the decision is based on proper legal standards and the legal findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); *Batson v. Comm'r Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citation and internal quotations omitted). In reviewing the Commissioner's alleged errors, this court must weigh "both the evidence that supports and detracts from the [Commissioner's] conclusions." *Martinez v. Heckler*, 807 F.2d 771, 772 (9th Cir. 1986). Variable interpretations of the evidence are insignificant if the Commissioner's interpretation is rational. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005).

When the evidence before the ALJ is subject to more than one rational interpretation, we must defer to the ALJ's conclusion. *Batson*, 359 F.3d at 1198 (*citing Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995)). A reviewing court, however, "cannot affirm the Commissioner's decision on a ground that the Administration did not invoke in making its

2 – OPINION AND ORDER

decision." *Stout v. Comm'r Soc. Sec. Admin.*, 454 F.3d 1050, 1054 (9th Cir. 2006) (citation omitted). Finally, a court may not reverse an ALJ's decision on account of an error that is harmless. *Id.* at 1055–56. "[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination." *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009).

## DISCUSSION

Plaintiff's argues that the ALJ erred by improperly: (1) rejecting her testimony; (2) rejecting the opinions of her treating nurse and chiropractor; (3) rejecting lay witness testimony; and (4) finding that she could return to her past relevant work at step four of the sequential analysis. Pl.'s Br. 9-20.

I.     Plaintiff's Testimony

The ALJ found plaintiff's subjective symptom statements "not entirely credible" because "the objective evidence, when considered as a whole, is not consistent with [plaintiff's] allegations of disabling pain." Tr. 22. The ALJ made several findings in support of her conclusion.

First, the ALJ found that plaintiff's statements that "she is unable to work due to her back, neck, and hip" pain were inconsistent with her "mild" and "normal" medical diagnoses relating to her neck and back pain and lower extremities. *Id.* The ALJ specifically noted that in August 2012, a cervical spine x-ray revealed "mild" degenerative disk disease and a "mild" degree of neutral foraminal narrowing at plaintiff's C-C6 vertebra. *Id.* The ALJ also noted that plaintiff's lumbar spine x-rays from the same time period revealed "mild" dextroconvex scoliosis. *Id.* The ALJ noted that in September 2012, plaintiff reported no lower extremity weakness and during this visit, as well as during a return visit in December 2012, an examination of her back revealed "normal" results with "normal" reflexes, gait, and strength. *Id.* The ALJ

noted plaintiff's MRI results from February 2013 that revealed some disk bulging, but only "mild" narrowing of the neutral foramina. *Id.* at 23. Finally, the ALJ noted one of plaintiff's MRIs from December 2013 that "showed [her] lumbar spine was felt to be unremarkable other than mild dural ectasia," and a report from April 2014, where plaintiff "reported her body-wide aches were improved" and "reported they were sometimes bad at night, but she walked and they got better." *Id.*

The ALJ next found plaintiff's subjective symptom statements not credible because her treatment was "minimal and essentially routine and conservative." *Id.* The ALJ specifically noted that there is no evidence that plaintiff has taken any narcotic based or over the counter pain medication "in spite of the allegations of quite limiting pain." *Id.* The ALJ also noted "significant gaps in [plaintiff's] history of treatment," including "not receiving treatment for almost a full year after her alleged onset date," not seeking counseling for her mental impairment until October 2013, "despite being referred to counseling over six months earlier," and findings from her counselor that once she began counseling, she had made "some progress." *Id.*

In addition to referencing inconsistencies between plaintiff's subjective symptom statements, the treatment she sought, and the objective findings in the medical records, the ALJ also noted that plaintiff's reported activities of daily living ("ADL's") "are not limited to the extent one would expect, given her complaints of disabling symptoms and limitations." The ALJ also noted that plaintiff provided inconsistent statements regarding her ADL's at various times. *Id.* The ALJ specifically noted that plaintiff is "functionally independent concerning her personal care needs" and can grocery shop and walk the six blocks to the store, go out alone and use public transportation, prepare meals, do laundry, dishes, and light cleaning, and help attend to her children. *Id.* The ALJ also noted that despite initially denying babysitting her

grandchildren at the hearing, plaintiff later admitted that she picks up her seven-year-old granddaughter from school and watches her for about two hours at times until her parents pick her up. *Id.*

The ALJ noted that in addition to these inconsistent statements, "the record suggests even greater involvement" by plaintiff in caring for her grandchildren, such as reports from January, February, and March 2014, where plaintiff reported that her grandchildren, ages 7 and 11, live with her and she feeds and cares for them because the children's parents were "not caring for them." *Id.* The ALJ also noted that in April 2014, plaintiff reported she cared for her grandchildren "the majority of the time because she does not work." *Id.* The ALJ noted that the *Dictionary of Occupational Titles*[1] ("DOT") "defines the job of a child care worker (DOT 301.677-010) as a medium unskilled job" and found that although plaintiff's child care tasks may not rise to this medium level of exertion, "they do suggest she should be able to perform some sedentary work activity." *Id.*

The ALJ also noted internal inconsistency in plaintiff's statements regarding her ability to travel. *Id.* Specifically, the ALJ noted that although plaintiff "initially denied traveling since her alleged onset date," after further questioning at the hearing, she admitted taking trips to Mexico and California. *Id.* at 22-23. The ALJ found that "although traveling and a disability are not mutually exclusive, [plaintiff's] decision to go on these trips tends to support a finding that she could do some sedentary unskilled work activity." *Id.*

---

[1] The DOT is a publication of the United States Department of Labor that gives detailed requirements for a variety of jobs. The Administration has taken administrative notice of the DOT. *Massachi v. Astrue,* 486 F.3d 1149, 1153 n. 8 (9th Cir. 2007). The Administration relies "primarily on the DOT" for "information about the requirements of work in the national economy" at steps four and five of the sequential evaluation process. SSR 00-4p, 2000 WL 1898704, at *2.

Finally, in addition to noting inconsistencies between plaintiff's symptom statements and the medical records and her ADL's, and the internal inconsistencies in the statements plaintiff made regarding her ability to travel and care for her grandchildren, the ALJ also noted that plaintiff "stopped working due to a business-related layoff when the company relocated rather than because of her allegedly disabling impairments." *Id.*

Plaintiff argues that the ALJ failed to articulate a clear and convincing reason, supported by substantial evidence, for rejecting her subjective symptom statements concerning the extent and severity of her impairments and also challenged several of the reasons proffered by the ALJ for finding her not credible. Pl.'s Br. 13-16.

First, plaintiff argues that she is unable to take NSAID medications due to her chronic kidney disease and because many narcotic pain medications contain NSAIDs, her inability to "take certain pain medications as a result of one of her other impairments is not an indication that her pain is not as severe as alleged." *Id.* at 14.

Second, plaintiff argues that her conservative treatment for her back was not a valid reason to discredit her symptom statements because: (1) conservative treatment is what her doctors recommended; (2) her spinal condition cannot be repaired with surgery; and (3) she had gaps in her medical treatment because she could not afford treatment without insurance, which she did not obtain until 2014. *Id.*

Third, plaintiff argues that her ADL's as cited by the ALJ were not inconsistent with her statements that she is unable to sit, stand, walk, or lift well enough to make it through a typical work day. *Id.* Plaintiff states that the ALJ's assertion to the contrary was improper because her ADL's, such as watching her grandchildren were not comparable to performing full-time work because her grandchildren were in school most of the day and when they came home from

6 – OPINION AND ORDER

school, they were largely self-sufficient. *Id.* Plaintiff further asserts that caring for her grandchildren "as described in the record, involved nothing more than making dinner for a 7 and 11 year old and making sure they went to bed on time," Pl.'s Reply Br. 3, and "making dinner was not something [she] did on a regular basis," but instead was something she did only when their parents are out of the house. Pl.'s Br. 14.

Finally, plaintiff argues that although she "left her most recent job because the company moved out of state rather than because of her impairments," "she was in so much pain while she was still doing that job that she missed 2 days of work each week" and "was able to keep her job for as long as she did only because the employer didn't want to go to the trouble of training a worker to replace [her] right before the planned shutdown." *Id.* at 15.

When a claimant has medically documented impairments that could reasonably be expected to produce some degree of the symptoms complained of, and the record contains no affirmative evidence of malingering, "the ALJ can reject the claimant's testimony about the severity of . . . symptoms only by offering specific, clear and convincing reasons for doing so." *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996) (internal citation omitted). A general assertion that the claimant is not credible is insufficient; the ALJ must "state which . . . testimony is not credible and what evidence suggests the complaints are not credible." *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). The reasons proffered must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (internal citation omitted).

The ALJ may consider objective medical evidence and the claimant's treatment history, as well as any unexplained failure to seek treatment or follow a prescribed course of treatment. *Smolen*, 80 F.3d at 1284. The ALJ may also consider the claimant's daily activities, work

7 – OPINION AND ORDER

record, and the observations of physicians and third parties with personal knowledge about the claimant's functional limitations. *Id.* Specifically, when a claimant's work history undercuts her assertions, the ALJ may rely on that contradiction to discredit the claimant. *Bruton v. Massanari*, 268 F.3d 824, 828 (9th Cir. 2001). Further, when a claimant's daily activities "are transferable to a work setting" or "contradict claims of a totally debilitating impairment," performance of those activities may serve as a basis for discrediting a claimant. *Molina v. Astrue*, 674 F.3d 1104, 1112-13 (9th Cir. 2012).

Finally, the ALJ may employ ordinary techniques of credibility evaluation, such as the claimant's reputation for lying and prior inconsistent statements concerning the alleged symptoms. *Smolen*, 80 F.3d at 1284. If the "ALJ's credibility finding is supported by substantial evidence in the record, [the court] may not engage in second-guessing." *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002) (internal citation omitted).

Here, the ALJ listed several specific, clear and convincing reasons for finding plaintiff's subjective symptom testimony not credible. Critically, the ALJ found plaintiff's statements not credible due to inconsistent statements she made regarding her ability to travel and care for her grandchildren. *Smolen*, 80 F.3d at 1284.

With regard to plaintiff's statements regarding the care she provided for her grandchildren, the ALJ specifically noted that plaintiff originally made a wholesale denial of caring for her grandchildren before later revealing that she picked up her seven year old daughter from school and watched her for about two hours until her parents picked her up. Moreover, the ALJ noted that the record revealed that plaintiff played an even more active role in the care of her grandchildren than the limited admission she provided at the hearing. The ALJ cited specific instances in the record from January, February, and March of 2014, where plaintiff's

grandchildren lived with her, as well as and evidence from April 2014, indicating that plaintiff cared for her grandchildren "a majority of the time."

Accordingly, because the record, as cited by the ALJ, confirms greater involvement than plaintiff initially claimed – that she provided no care for her grandchildren – and more involvement than she later admitted at the hearing – that she picked up one grandchild and watched her for two hours per day - and even more involvement than plaintiff alleges now – that she merely fed and managed the children's bed times, the ALJ's observations of plaintiff's internally inconsistent statements with regard to this issue, serve as a clear and convincing reason to discredit plaintiff's subjective statements. *Smolen*, 80 F.3d at 1281, 1284. Similarly, with regard to plaintiff's ability to travel, the ALJ specifically noted that plaintiff originally made a wholesale denial of traveling out of the state and country, before later admitting to taking two trips in January 2012 to California and Mexico. This also serves as a clear and convincing reason to discredit plaintiff's subjective statements. *Id.* While variable interpretations of this evidence may exist, the ALJ's analysis was nonetheless reasonable, such that it must be upheld. *See Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1198 (9th Cir. 2004).

In sum, the ALJ provided clear and convincing reasons, supported by substantial evidence, for rejecting plaintiff's subjective symptom statements. As a result, because at least one legally sufficient reason exists, *Carmickle v. Comm'r of Soc. Sec. Admin.*, 533 F.3d 1155, 1162-63 (9th Cir. 2008), this court need not discuss all of the reasons provided by the ALJ for her adverse credibility finding, such as her finding that plaintiff's subjective symptom statements were inconsistent with her medical diagnoses relating to her neck and back pain, *Smolen*, 80 F.3d at 1284, and the fact that she stopped working due to a layoff, rather than because of her alleged disability, *Bruton*, 268 F.3d at 828. The ALJ's credibility finding is affirmed.

9 – OPINION AND ORDER

II.    Rejection of Plaintiff's Treating Nurse Practitioner and Chiropractor's Opinions

Plaintiff argues that the ALJ failed to give specific and legitimate reasons for rejecting the opinions of her treating chiropractor, Megan DeJana, DC, and her treating nurse practitioner, Hannah Pappas, FNP. Pl.'s Br. 9-12.

The ALJ reviewed the opinion of Dr. DeJana, and noted that she opined that plaintiff could perform light duty work with no lifting over five pounds, no lifting above waist level, and no bending. Tr. 24 (citing Tr. 406). The ALJ also noted that Dr. DeJana opined that plaintiff should be limited to working four hours per day and that plaintiff needed to be able to move about to relieve her pain. *Id.* (citing Tr. 406-07). The ALJ accorded Dr. DeJana's opinion "minimal weight," reasoning that "she restricted her opinions to a only a short period of time, from November 17, through November 30, 2011, and there is no evidence that she thought these restrictions should continue after this period lapsed." *Id.*

The ALJ also reviewed the opinion of Ms. Pappas and noted that she opined that plaintiff is "unable to lift her arms above shoulder level and said she is unable to lift a full coffee cup." *Id.* The ALJ gave Nurse Pappas' opinion "little weight," noting that she is not an acceptable medical source that is able to provide medical opinions in the record, her "opinions are vague as to how [plaintiff's] impairments affect [her] ability to function other than her ability to lift," and her opinion on plaintiff's ability to lift is inconsistent with plaintiff's ADL's. *Id.* The ALJ also noted that plaintiff's ability to "care for her grandchildren is inconsistent with Nurse Pappas' conclusion [that plaintiff] cannot lift a cup of coffee." *Id.*

Evidence from "other sources," including nurse practitioners, chiropractors, and other non-medical sources may be used to show the severity of a claimant's impairments and how they affect her ability to work. 20 C.F.R. §§ 404.1513(a); 416.913(a). In order to reject evidence

from "other sources," the ALJ must give germane reasons for doing so. *Molina v. Astrue*, 674
F.3d 1104, 1111 (9th Cir. 2012).

Here, as an initial matter, plaintiff misstates the test the ALJ must use to evaluate the
opinions of Dr. DeJana and Ms. Pappas. According to the regulations, the ALJ was not obligated
to consider the records from Dr. DeJana, a chiropractor, or Ms. Pappas, a nurse practitioner, as
medical sources. 20 C.F.R. §§ 404.1513(a); 416.913(a). Rather, the ALJ needed only to provide
germane reasons to reject these "other source" opinions. *Molina*, 674 F.3d at 1111. The ALJ
satisfied this burden.

The ALJ accorded minimal weight to Dr. DeJana's opinion because she restricted her
opinions to only a short period of time – two weeks – and provided no indication that the
restrictions should continue into the future. The record reveals that although Dr. DeJana
completed several more examinations of plaintiff after the expiration of the two week limitation
period she initially endorsed, she did not endorse any further restrictive limitations on plaintiff's
behalf as a result of those examinations. Because an ALJ may reject any portion of an
"acceptable medical source" that endorses only temporary restrictions, *Carmickle*, 533 F.3d at
1165, and because Dr. DeJana's endorsed restriction had a temporary shelf life of only two
weeks, this court finds that the ALJ's reason for rejecting Dr. DeJana's "other source" opinion
meets the higher burden required to reject the opinion from "acceptable medical sources," *id.*,
and, therefore, the reasoning provided by the ALJ for rejecting Dr. DeJana's opinion more than
satisfies the lower germane reasons standard.

Similarly, the ALJ provided germane reasons for rejecting Ms. Pappas' opinion.
Specifically, the ALJ noted that Ms. Pappas statements were vague. *See Thomas*, 278 F.3d at
957 (it is well-established that "the ALJ need not accept the opinion of any physician . . . if that

11 – OPINION AND ORDER

opinion is brief, conclusory, and inadequately supported by clinical findings.") *See also Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 603 (9th Cir. 1999) ("the ALJ is responsible for resolving conflicts in medical testimony, and resolving ambiguity."). Moreover, the ALJ noted that the only testimony provided by Ms. Pappas relating to plaintiff's limitations that was not vague – that plaintiff could not lift even a cup of coffee – was contradicted by the evidence of plaintiff's ADL's on the record – such as the role plaintiff took in caring for the daily needs of her grandchildren. *See Morgan*, 169 F.3d at 601 (substantial evidence supports an ALJ's decision to reject a treating doctor's opinion when "the ALJ list[s] specific examples of how the level of impairment indicated by . . . [the doctor] was unreasonable given the description of . . . [plaintiff's] reports and other evidence in the record.").

Although plaintiff disagrees with the ALJ's interpretation of the medical record, "[w]hen the evidence before the ALJ is subject to more than one rational interpretation, we must defer to the ALJ's conclusion." *Batson*, 359 F.3d at 1198. As such, this Court finds that the ALJ properly rejected the "other source" opinions of Dr. DeJana and Nurse Pappas by providing germane reasons for doing so. The ALJ's finding with regard to this issue is affirmed.

III.    Lay Witness Statements

Plaintiff argues that the ALJ neglected to provide a germane reason to reject the lay statements of her husband, Juan Cardenas. Pl.'s Br. 16-17.

The ALJ considered the lay statements of plaintiff's husband as endorsed on a function report, which indicated that plaintiff had problems with depression, sleep, concentrating, bending, lifting, walking, climbing stairs, carrying things, and doing household chores, such as cleaning. Tr. 24. The ALJ found that Mr. Cardenas' statements were "generally corroborative"

of plaintiff's allegations, however, the ALJ was "unable to find the statements probative in terms of the ultimate issue of disability in light of the medical and other factors of this case." *Id.*

The ALJ supported her adverse credibility finding by reasoning that "the lay witness was reliant on [plaintiff's] subjective description of her impairments, which are not entirely credible in this case" and, thus, the statements "cannot outweigh the analysis of the objective clinical and laboratory evidence, as well as [plaintiff's] overall functional abilities." *Id.*

An ALJ must consider the statements of family and friends. *Smolen*, 80 F.3d at 1288. "Descriptions by friends and family members in a position to observe a claimant's symptoms and daily activities have routinely been treated as competent evidence." *Sprague v. Bowen*, 812 F.2d 1226, 1232 (9th Cir. 1987). The ALJ can reject the testimony of lay witnesses only by providing reasons germane to each witness. *Smolen*, 80 F.3d at 1288. Lay witness testimony may be disregarded on the same basis as claimant's discredited subjective reports. *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 694 (9th Cir. 2009). *See also Molina*, 674 F.3d at 1114-22 (affirming the ALJ's decision "where the same evidence that the ALJ referred to in discrediting the claimant's claims also discredits the lay witness's claims") (citation and internal quotations omitted). The ALJ may also reject lay witness testimony due to inconsistencies with the medical evidence. *Bayliss v. Barnhart*, 427 F.3d 1211, 1218 (9th Cir. 2005).

Here, the ALJ found Mr. Cardenas' statements not credible because they were inconsistent with the medical and other evidence in the record, and also because his statements were reliant on plaintiff's subjective testimony, which, as stated above, the ALJ properly found not credible. *Valentine*, 574 F.3d at 694; *Molina*, 674 F.3d at 1114-22; *Bayliss*, 427 F.3d at 1218. Accordingly, the ALJ provided germane reasons for rejecting Mr. Cardenas' lay testimony. As such, the ALJ's decision is upheld as to this issue.

13 – OPINION AND ORDER

IV.    Step-Four Finding

Plaintiff argues that the ALJ erred in four ways at step-four of the sequential analysis. Pl.'s Br. 17-20.

First, plaintiff argues that the ALJ erred by failing to specify which of her past three hand packaging jobs was performed at the sedentary exertional level. Pl.'s Br. 17-18. Plaintiff argues this was an error because she worked at three different hand packaging jobs during the relevant time period and two of those jobs exceed her functional limitations set forth in her residual functional capacity ("RFC") assessment limiting her to light exertional level work. *Id.* Plaintiff argues that the vocational expert ("VE") acknowledged that she worked at three separate hand packaging jobs during the relevant time period, each of which had lifting limitations of five to ten pounds, but only one of which allowed her to sit down at will. *Id.* at 18. Plaintiff asserts that only her first hand packaging job, which she held from December 2006, through June 2008, where her lifting was limited to 5 to 10 pounds and she had the option to sit or stand, was performed at an exertional level within the limitation set forth in her RFC because she had the option to sit down while working. *Id.* (citing tr. 269-77).

Plaintiff asserts that the second and third hand packaging jobs she held from September 2008, through June 2010, and from October 2010, through June 2011, where she was not allowed to sit down, were both inconsistent with the ALJ's RFC finding that restricts her to light exertional level work, because light exertional level work "requires standing or walking, off and on, for a total of approximately 6 hours of an 8-hour workday." *Id.* (quoting SSR 83-10). Plaintiff asserts that because she was not allowed to sit at either of these two jobs, the amount of standing that each job requires exceeds her light exertional level work limitation in the RFC, which limits her to standing for no more than six hours per day.  Plaintiff, therefore, argues that

the ALJ erred by finding she could return to her past relevant work as a hand packager without specifying which of the past three hand packaging jobs she can return to. *Id.*

Second, plaintiff argues that the ALJ erred by finding she could return to her past relevant work as a hand packager because she testified that she was absent twice per week near the end of her time at her last hand packaging job that she held from October 2010, through June 2011, and this was tolerated by her employer "only because the company was about to shut down to move to another state." *Id.* Plaintiff argues that a typical hand packager job employer would not allow absences that often and, thus, the ALJ erred by finding that she could return to this line of work. *Id.*

Third, plaintiff argues that "the ALJ expressly stated [she] 'can perform simple and routine tasks, but not detailed or complex tasks,'" and the job of hand packager as defined by the DOT requires reasoning levels that exceed her RFC. *Id.* at 19. As such, plaintiff appears to argue that she cannot perform the work of a hand packager as described in the DOT and as it is performed generally in the national economy.

Finally, plaintiff argues that the ALJ's step four finding should be reversed because the ALJ's ultimate RFC finding was more restrictive than the hypothetical question posed to the VE and, therefore, the VE's testimony in response to that incomplete hypothetical has no evidentiary value. Pl.'s Br. 20; Pl.'s Reply Br. 8. Specifically, plaintiff argues that her mental limitations were not in the record at the time of the hearing and, therefore, the VE never got the chance to address how these mental limitations would affect her ability to perform the work of a hand packager. Pl.'s Reply Br. 8. Moreover, plaintiff argues that the ALJ limited her to performing "simple and routing tasks, but not detailed or complex tasks," and pursuant to the DOT, performing the job of a hand packager requires the ability to carry out "detailed but uninvolved

written or oral instructions." *Id.*; Pl.'s Br. 19. As such, plaintiff again appears to argue that she cannot perform the work of a hand packager as described in the DOT and as it is performed generally in the national economy.

The ALJ found that plaintiff had the RFC to "perform light work," with the additional limitations that she can only "occasionally" stoop, kneel, crouch, crawl, climb, and reach overhead bilaterally, and can only perform simple and routine tasks, but not detailed or complex tasks. Tr. 21.

Based on the testimony from a VE, which was reliant on plaintiff's RFC, her work history that she submitted to the record, and her testimony at the hearing, the ALJ found at step four that plaintiff could perform her past relevant work as a hand packager as she actually performed it at the sedentary level of exertion, even though the DOT lists hand packager as it is generally performed in the national economy, as a medium exertion, unskilled position. Tr. 25 (citing tr. 39-40, 56, 237-38). In so finding, the ALJ noted the VE's observation of plaintiff's testimony that she "packaged and counted CDs" and "reported the most weight she lifted and carried was about five pounds" and, thus, she "actually performed" her work as a hand packager at a sedentary exertional level." *Id.* (citing tr. 56). The ALJ also noted the VE's observation of plaintiff's testimony that while working as a hand packager, she was able to sit or stand at her own option and she only had to reach to her side to place completed items on to a pallet. *Id.* Finally, the ALJ noted the VE's conclusion that an individual with the physical restrictions set forth in the RFC, would be able to perform plaintiff's past relevant work as a hand packager as she actually performed the job. *Id.*

The ALJ also noted, however, that the VE was not asked if an individual could perform this work with the addition of the mental limitations stated in the RFC. *Id.* The ALJ stated that

16 – OPINION AND ORDER

"new evidence submitted shows that [plaintiff] does have some limitations in her mental functioning, specifically with some concentration deficits." *Id.* The ALJ found, however, that "the addition of a limitation in the [RFC] to the performance of simple and routine tasks does not change the finding that [plaintiff] could perform her past relevant work based on the fact that the [VE] indicated her past work as a hand packager is considered unskilled work." *Id.* Ultimately, the ALJ found that "in comparing [plaintiff's RFC] with the physical and mental demands of this work . . . [plaintiff] is able to perform her preform [her past work as a hand packager] as **actually performed**." *Id.* (emphasis supplied).

At step four, claimants have the burden of showing that they can no longer perform their past relevant work. *Pinto v. Massanari*, 249 F.3d 840, 845 (9th Cir. 2001) (citing 20 C.F.R. §§ 404.1520(e) and 416.920(e)). Once they have shown this, the burden at step five shifts to the Secretary to show that, taking into account a claimant's age, education, and vocational background, she can perform any substantial gainful work in the national economy. *Id.* (citing 20 C.F.R. §§ 404.1520(f) and 416.920(f)).

Work that a claimant performed within the last 15 years, which lasted long enough for him or her to learn to do it, and was substantial gainful activity, is considered past relevant work. 20 C.F.R. §§ 404.1565(a), 416.965(a). The ALJ is not required to obtain testimony from a VE at this stage. *Crane,* 76 F.3d at 255. However, "although the burden of proof lies with the claimant at step four, the ALJ still has a duty to make the requisite factual findings to support his conclusion." *Id.* (citing Social Security Ruling ("SSR") 82–62; 20 C.F.R. §§ 404.1571 and 416.971, 404.1574 and 416.974, 404.1565 and 416.965). This is done by looking at the RFC and the physical and mental demands of the claimant's past relevant work. *Id.* (citing 20 C.F.R. §§ 404.1520(e) and 416.920(e)). The claimant must be able to perform: (1) the actual functional

demands and job duties of a particular past relevant job; **or** (2) the functional demands and job duties of the occupation as generally required by employers throughout the national economy. *Id.* (citing SSR 82–61) (emphasis supplied). This requires specific findings as to the claimant's RFC, the physical and mental demands of the past relevant work, and the relation of the RFC to the past work. *Id.* (citing SSR 82–62).

"The claimant is the primary source for vocational documentation, and statements by the claimant regarding past work are generally sufficient for determining the skill level, exertional demands, and nonexertional demands of such work." SSR 82-62, available at 1982 WL 31386 at *3. Moreover, "the [SSR] name two sources of information that may be used to define a claimant's past relevant work as actually performed: a properly completed vocational report, SSR 82–61, and the claimant's own testimony, SSR 82–41." *Pinto*, 249 F.3d at 845. "An ALJ may rely on expert testimony which contradicts the DOT, but only insofar as the record contains persuasive evidence to support the deviation." *Johnson v. Shalala*, 60 F.3d 1428, 1435 (9th Cir. 1995).

Here, the court finds unpersuasive plaintiff's first argument that the ALJ erred by failing to specify which of her past three hand packaging jobs was performed at the sedentary exertional level. The ALJ noted the VE's observations of plaintiff's testimony from the hearing that she lifted only five pounds and alternated between sitting and standing at her past relevant work as a hand packager. Moreover, plaintiff concedes that the first of her three previously worked hand packaging jobs she worked at from December 2006 through June 2008 allowed her the option to sit or stand. This persuasive evidence, which came directly from plaintiff, supports the ALJ's finding that plaintiff could perform her past work as a hand packager as she actually performed it at the sedentary exertional level from December 2006 through June 2008. *Johnson*, 60 F.3d at

1435; *Pinto*, 249 F.3d at 845; *see also* SSR 82-61, available at WL 31387, at \*2 ("where the evidence shows that a claimant retains the RFC to perform the functional demands and job duties of a particular past relevant job as he or she actually performed it, the claimant should be found to be 'not disabled.'").

Accordingly, because the VE opined, and ALJ found, that plaintiff is able to perform the duties of a hand packager as she has actually previously performed them, and the record demonstrates that at least at one of the three hand packaging jobs she held within the last fifteen years – specifically, the job she held from December 2006 through June 2008 that allowed her to option to stand or sit that meets the sedentary exertional limitation in plaintiff's RFC - this court finds that the ALJ did not err by failing to question the VE as to whether plaintiff could perform all her previous work at all three of her previously held hand packaging jobs.

Similarly unpersuasive is plaintiff's second argument that the ALJ erred at step four by finding her not disabled despite being absent twice per week near the end of her last hand packaging job, because a typical employer of a hand packaging job would not allow absences that often. In this case, it is immaterial what a typical employer of a hand packaging job would allow or disallow, because the ALJ did not find that plaintiff could perform the work of a hand packager as it is performed generally in the national economy. Rather, the ALJ found that plaintiff could perform the duties of a hand packager as she actually performed them. As stated above, pursuant to SSR 82–61, the ALJ need only establish that plaintiff was able to perform: (1) the actual functional demands and job duties of a particular past relevant job; **or** (2) the functional demands and job duties of the occupation as generally required by employers throughout the national economy. The ALJ appropriately made findings relating to the former section of SSR 82-61, while plaintiff makes arguments relating to the latter part of SSR 82-61.

Moreover, as also stated above, plaintiff successfully performed the work of a hand packager at the sedentary exertional level from December 2006 through June 2008. Plaintiff's assertion here relates to a subsequent position she held from October 2010 through June 2011 that had different exertional demands. Plaintiff makes no assertion, and this court can find no evidence of the fact, that plaintiff had attendance problems at her first hand packager job that she worked at from December 2006 through June 2008, which was performed at the sedentary level. Because the ALJ is not required to prove that plaintiff can perform all of her previous jobs, and the record reveals that plaintiff can perform the duties of at least one of her previous hand packager jobs, this court finds that the ALJ did not err by failing to consider plaintiff's attendance issues from one of the three hand packaging jobs she previously worked at - which this court notes plaintiff discontinued working at for reasons other than her attendance issues.

Also unpersuasive is plaintiff's third argument that she cannot perform the job of hand packager as defined by the DOT and as it is performed generally in the national economy because performance of that job would require reasoning levels in excess of those listed in her RFC. As stated above, the ALJ did not find that plaintiff can perform the work of hand packager as it is performed generally in the national economy. The ALJ found that that plaintiff can perform her past relevant work as she actually performed it, thus satisfying the requirements of SSR 82–61 (1), which requires, in pertinent part, that a claimant must be able to perform the actual functional demands and job duties of a particular past relevant job. As stated above, because the hand packaging job plaintiff held from December 2006 through June 2008 - that allowed her the option to stand or sit - meets the sedentary exertional limitation in plaintiff's RFC, the ALJ satisfied the requirement of SSR 82-61 (1) by finding that plaintiff can perform her past work of that particular past relevant job. Thus, the ALJ did not err in this regard.

Finally, this court finds unpersuasive plaintiff's fourth argument that the ALJ's step four finding should be reversed because the ALJ's RFC finding was more restrictive than the hypothetical question posed to the VE and, therefore, the VE's testimony in response to that incomplete hypothetical has no evidentiary value.    The ALJ is not required to obtain testimony from a VE at step four. *Crane,* 76 F.3d at 255.  Rather, pursuant to SSR 82–62, the ALJ needed only to make specific findings as to plaintiff's RFC, the physical and mental demands of her past relevant work, and the relation of the RFC to the past work. *Id.*  The ALJ made such findings.

As stated above, the ALJ specifically found that new evidence submitted shows that plaintiff does have some limitations in her mental functioning, specifically with some concentration deficits, but further found that the addition of a limitation in the RFC to the performance of simple and routine tasks does not change her finding that plaintiff could perform her past relevant work, based on the VE's indication that her past work as a hand packager is considered unskilled work.  The ALJ then compared plaintiff's RFC to the physical and mental demands of her previously performed work and concluded that she can perform her past work as a hand packager as actually performed it despite these additional limitations.

Accordingly, the ALJ did not err in this regard.  As such, the ALJ's finding at step four is supported by substantial evidence and is, therefore, affirmed.

///

///

///

///

///

///

21 – OPINION AND ORDER

CONCLUSION

Because the Commissioner's decision is based on proper legal standards and supported by substantial evidence, the Commissioner's final decision is AFFIRMED and this case is DISMISSED.

IT IS SO ORDERED.

DATED this 10 day of March 2016.


_____
THOMAS M. COFFIN
United States Magistrate Judge